UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00213-JHM-RSE

**ALFRED KESSEH**                                                                  **PETITIONER**

**VS.**

**AMY ROBEY,** *Warden*                                                    **RESPONDENT**

<u>Findings of Fact, Conclusions of Law, and Recommendation</u>

Alfred Kesseh ("Kesseh") is a Kentucky prisoner that was convicted by a jury in Jefferson County, Kentucky, of one count of first-degree rape and multiple counts of robbery, burglary, theft, and fraudulent use of a credit card. (DN 15-2, at PageID # 115-17). Kesseh has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 for relief from his convictions. (DN 1). Respondent Amy Robey ("Warden") has responded. (DN 15). The District Judge referred this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter. (DN 17). This matter is ripe for review.

<u>I. Findings of Fact</u>

Kesseh's convictions arise from a six-week crime spree largely targeting University of Louisville students. *Kesseh v. Commonwealth*, No. 2021-SC-0032-MR, 2022 Ky. Unpub. LEXIS 25 (Ky. Apr. 28, 2022). Kesseh was tried before a Jefferson County, Kentucky jury. *Id.* at *8. At the end of the trial, the jury found Kesseh guilty of multiple counts of fraudulent use of a credit card, theft, burglary, and robbery and one count of rape. (DN 15-2, at PageID # 115-17). The Court

adopts the factual findings of the Supreme Court of Kentucky from Kesseh's direct appeal.[1]

On December 7, 2018, Kesseh burglarized Jason Schreiber's apartment at the Cardinal Towne Apartment Complex ("Cardinal Towne"). *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *2. When Schreiber arrived at his apartment, he noticed that his front door was ajar. *Id.* Prior to entering, he called the police; however, Kesseh had already left by the time police arrived and searched the apartment. *Id.* Schreiber and his roommates reported that they were missing several of their electronics, including laptops and cameras, as well as their backpacks. *Id.* Surveillance footage showed Kesseh exiting the apartment with two backpacks which Schreiber later identified as belonging to him and his roommate. *Id.* When Kesseh was later arrested, he was carrying one of these backpacks. *Id.*

A week later, Kesseh was tied to the theft of Paulo Robenheim's bank card. *Id.* Robenheim realized his bank card was missing, and recent purchases showed that his card had been used at a Speedway and a McDonald's which he had not visited. *Id.* at *2-3. Reviewing the surveillance video, the Speedway manager identified the man using the card as matching Kesseh's description. *Id.* at *3.

On December 18, 2018, Kesseh broke into three more apartments at Cardinal Towne. *Id.* According to the first victim, Erin Kidwell, Kesseh entered her apartment around 3:00 a.m., made enough noise to wake her, and then stuck his head into her bedroom while she laid still. *Id.* Kesseh stayed in her apartment for several minutes but did not steal anything. *Id.* Surveillance footage confirmed Kesseh roaming the halls of the complex at the corresponding time and day. *Id.* Kidwell's apartment neighbor, Nikayla McFarland, reported having her laptop stolen that same

---

[1] On a petition for habeas corpus brought pursuant to 28 U.S.C. § 2254, a presumption exists that the factual findings of the state court are correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because Kesseh does not challenge the factual findings from his direct appeal, this Court will adopt the Kentucky Supreme Court's recitation of relevant facts.

evening, and surveillance footage showed Kesseh in the complex's hallway holding the stolen laptop. *Id.* The third victim, Ali Condor, was hosting two individuals, Grecia Sosa and Devon Rose, at the time Kesseh entered Condor's apartment. *Id.* at *3-4. Kesseh stole a wrapped Christmas gift, a PlayStation gaming console, a laptop and charger, and Sosa's wallet. *Id.* at *4. Kesseh was identified in the hallway opening Condor's apartment door. *Id.* Surveillance footage from White Castle also confirmed that he used Sosa's debit card to purchase a meal. *Id.*

Four days after these burglaries, Kesseh burglarized the Cardinal Towne apartment of Jacquayah Washington and Madison McCellon. *Id.* The roommates reported that several video game consoles and paraphernalia, a speaker, and other items were stolen. *Id.* Surveillance footage once again showed Kesseh leaving their apartment with a stolen item in hand. *Id.*

Several weeks later, Kesseh entered Allison Kirk and Sarah Delaney's apartment at the University Pointe Apartment Complex ("University Pointe") just past midnight. *Id.* Delaney heard her apartment door open but assumed that it was her roommate's boyfriend leaving. *Id.* The next morning, the two women realized that a wallet and laptop were missing. *Id.* at *4-5. On her bank statement, Delaney noticed that she had several unauthorized purchases on her card. *Id.* at *5. Later, employees from two of the establishments identified Kesseh as the man using Delaney's card to make these purchases. *Id.* Kesseh was also in possession of Kirk's laptop when he was arrested. *Id.* Kesseh had changed the login information to his name and was logged into his Facebook account on the stolen computer. *Id.*

Two days later, on January 9, 2019, Kesseh broke into Justin Wells' University Pointe apartment. *Id.* When Wells went to investigate the noise, he was confronted by Kesseh who brandished a pistol at him, demanded valuables, and threatened to kill him. *Id.* However, when Wells saw the gun's orange tip, he recognized that it was a non-lethal weapon and rebuffed

Kesseh's demands. *Id.* After Kesseh left without further incident, Wells called the police. *Id.*

Kesseh immediately proceeded to break into the apartment of Skylar McGimsey, Kaitlin Armstrong, Sabrina Eden, and Kylie Meehan. *Id.* Kesseh entered Meehan's room and laid in her bed with her. *Id.* at *5-6. He then stood up, pointed his fake gun at Meehan, and demanded money. *Id.* at *6. She complied, giving him the pin number to her bank card. *Id.* While this interaction was occurring, Connor Dean, who was visiting Armstrong, went to investigate noises he had heard from the apartment's common living space. *Id.* Dean found an unfamiliar backpack, inside of which he found a laptop with the name "Alfred" on the loading screen. *Id.* When Dean saw Kesseh leaving Meehan's bedroom, he assumed that Kesseh was an invited guest and returned the stolen backpack and laptop to him. *Id.* Kesseh took the items and exited the apartment. *Id.* Surveillance footage confirms that Kesseh was in the hallway at that time, wearing a hat that he had stolen from Meehan's room. *Id.* Kesseh had left University Pointe before police officers arrived. *Id.*

Immediately thereafter, Kesseh entered the Cardinal Towne apartment of T.D. at 6:00 a.m. *Id.* When T.D. went to investigate the noises coming from her kitchen, she startled Kesseh, who pointed the fake gun at her. *Id.* at *6-7. Kesseh approached T.D. and marched her into her bedroom. *Id.* at *7. Kesseh asked if anyone else was in the apartment; T.D. lied and told him she was alone. *Id.* Kesseh commented on T.D.'s attractiveness. *Id.* He kissed her and asked, "Do you want to do this?" *Id.* T.D. replied, "No." *Id.* Kesseh continued with his unwanted advances, sexually assaulted her, and raped her. *Id.* Afterwards, Kesseh threatened to kill T.D. if she told anyone about what had occurred. *Id.* He then left T.D.'s apartment with her phone, Apple Watch, and a pair of gray Nike pants. *Id.* At the time of his arrest, these pants were in his possession. *Id.* T.D. reported the crime and was taken to the Center for Women and Families for a Sexual Assault Nurse's Examination, the results of which revealed DNA matching Kesseh's. *Id.*

On January 11, 2019, Kesseh was observed in the Louisville ESPN radio station offices rifling through desks. *Id.* He left before he could be apprehended, but the Louisville Metro Police Department arrested Kesseh three days later near University of Louisville residence halls and in possession of numerous stolen items. *Id.* at *7-8. Kesseh was indicted on twenty-four counts, including burglary, robbery, theft, fraudulent use of a credit card, and rape. *Id.* at *8. Prior to trial, Kesseh moved to sever the charges related to T.D. from the remainder of the counts, but the trial court denied his motion. *Id.* Kesseh was ultimately convicted of rape, robbery, burglary, theft, and fraudulent use of a credit card and sentenced to twenty-seven years in prison. *Id.* However, prior to final sentencing, Kesseh attempted to call T.D. from jail. *Id.* For this, the trial court held him in contempt and sentenced him to serve an additional six-months consecutive to his underlying sentence. *Id.*

Kesseh directly appealed his conviction to the Kentucky Supreme Court. *Id.* Kesseh's counsel raised five claims of error. *Id.* at *8-31. The Court affirmed Kesseh's judgment of conviction and sentence in its entirety. *Id.* at *32. In May of 2023, Kesseh filed the instant petition for writ of habeas corpus, under 28 U.S.C. § 2254, asserting five grounds for relief.[2] (DN 1-1).

## II. Standard of Review

The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides relief from a state conviction if the petition satisfies one of the following conditions:

> The [state court's] adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] In his petition, Kesseh listed all five of his grounds for relief under "Ground One." (DN 1-1, at PageID # 15). For clarity, the Court will address Kesseh's claims as separate grounds.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has distinguished federal habeas review from review on direct appeal. As to § 2254(d)(1), when the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010). Instead, the Court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409. The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id.* at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id.* at 405-06, 412-13.

As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L.Ed.2d 824 (2006). This subsection applies when a petitioner challenges the factual determinations made by the State court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001) (challenging the state court's determination that the evidence did not support an aiding and abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001) (challenge to state court's factual determination that Sheriff has not seen letter

6

prior to Clark's trial).

### III. Conclusions of Law

#### A. Ground 1: Misjoinder

On direct appeal, Kesseh challenged the trial court's denial of his severance request. Specifically, Kesseh argued that the charges related to T.D. and the charges involving the toy gun were too dissimilar from the other counts and should have been severed. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *8. He further contended that several other charges should have been severed into multiple cases,[3] and, as a result, he should have been entitled to eight separate trials. *Id.* The Kentucky Supreme Court affirmed the trial court's denial. *Id.* at *8-16. The court, applying Kentucky procedural rules, determined that, because Kesseh's charges "share[d] a multitude of relevant similarities" and Kesseh "fail[ed] to show actual and undue prejudice[,]" the trial court did not abuse its discretion in consolidating his indictments. *Id.* at *11, 16. Now, in his habeas petition, Kesseh claims that the trial court erred by denying his motion to sever and "ruling that the facts giving rise to each offense did not have to [sic] the level of a signature crime." (DN 1-1, at PageID # 15).

As an initial matter, Kesseh lists "RCr 6.18 and 8.31"[4] under "Ground One" of his habeas petition. (*Id.*). To the extent Kesseh claims that the state courts erred in applying Kentucky criminal

---

[3] Kesseh sought to sever the charges in jury instruction 4 (Burglary in the Second Degree at 1830 S. Third St., Apt. 1343) from the charges in instructions 5 (Burglary in the Second Degree at 325 W. Cardinal Blvd., Apt. 1107) and 6 (Theft by Unlawful Taking over $500.00). *Kesseh v. Commonwealth*, No. 2021-SC-0032-MR, 2022 Ky. Unpub. LEXIS 25, at *14 (Ky. Apr. 28, 2022). He sought to sever all three charges from those in jury instructions 7-9 (Burglary in the Second Degree at 325 W. Cardinal Blvd., Apt. 1466; Theft by Unlawful Taking over $500.00; Fraudulent Use of a Credit Card under $500.00). *Id.* From the remainder of the charges, he also sought to sever the charge in jury instruction 3 (Theft by Unlawful Taking under $500.00) and those charges laid out in jury instructions 12-16 (Burglary in the Second Degree at 2108 Unity Place, Apt. 112A; Theft by Unlawful Taking over $500.00; Theft by Unlawful Taking under $500.00; Fraudulent Use of a Credit Card under $500.00; Fraudulent Use of a Credit Card under $500.00). *Id.* at *14-15. Finally, Kesseh sought to sever the burglary of the ESPN radio office from all other charges. *Id.* at *15.
[4] Kentucky Rules of Criminal Procedure 6.18 and 8.31 relate to joinder and severance.

procedural rules, his claim is not cognizable for purposes of habeas review. S*ee Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The extraordinary remedy of habeas corpus lies only for a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

However, even assuming Kesseh asserted a violation of his Constitutional rights, he is not entitled to habeas relief on this claim. Improper joinder does not, by itself, violate the federal constitution. *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). In *Lane*, the United States Supreme Court briefly indicated that misjoinder could rise "to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.*; *see also Coley v. Bagley*, 706 F.3d 741, 753 (6th Cir. 2013). To show that he did not receive a fair trial for the purpose of habeas review, a petitioner must demonstrate that "the error had substantial and injurious effect or influence in determining the jury's verdict." *Sampson v. Macauley*, No. 21-1460, 2021 U.S. App. LEXIS 31084, at *13 (6th Cir. Oct. 15, 2021) (internal quotations omitted) (quoting *Coley*, 706 F.3d at 753). The burden falls on the petitioner to prove prejudice. *Lamar v. Houk*, 798 F.3d 405, 427 (6th Cir. 2015).

Kesseh fails to carry his burden. He does not offer any substantive argument about how the alleged misjoinder affected the jury's ability to render a fair verdict. Absent any showing of how he was prejudiced to the extent he was denied his right to a fair trial, the Court finds it difficult to evaluate whether the trial court's denial of Kesseh's motion to sever was contrary to clearly established federal law. *See Compton v. Ferguson*, No. 2:22-CV-00138-DLB-MAS, 2023 U.S. Dist. LEXIS 236924, at *8 (E.D. Ky. Dec. 19, 2023) (denying petitioner habeas relief where, despite his perfunctory claim that he was denied a fair trial, he did not offer any substantive

argument on how he was prejudiced).

Moreover, an evaluation of the record does not show that Kesseh was so prejudiced by the joinder that he is entitled to habeas relief. As both the Kentucky Supreme Court[5] and the Warden highlight, the charges related to T.D. followed a similar factual pattern as Kesseh's other burglaries and robberies. Because Kesseh had entered the bedrooms of other female victims, the fact that Kesseh took T.D. to her bedroom was not a deviation from his previous course of action. Furthermore, the robberies in which Kesseh used the toy gun demonstrate that Kesseh's behavior followed a common scheme. Finally, all of Kesseh's charges were connected by time, location, and a common scheme. For instance, as the Warden highlights, "the January 9 crimes all occurred within a few hours of each other, within two blocks of each other, and at the two apartment complexes Kesseh burglarized before." (DN 15, at PageID # 58). Kesseh has failed to demonstrate that the Kentucky Supreme Court's holding is contrary to, or an unreasonable application of clearly established federal law. Indeed, because Kesseh has failed to establish any prejudice resulting from the joinder of his charges, the Court recommends relief be denied as to Ground 1.

## B. Evidentiary Claims

In his second and third grounds for habeas relief, Kesseh alleges evidentiary errors. (DN 1-1, at PageID # 15). In his second claim, he alleges that the trial court erred in admitting a disc of video clips to the jury during deliberation. (*Id.*). In his third claim, Kesseh argues that the trial court erred in admitting video clips without a time stamp into evidence. (*Id.*).

As discussed, the Supreme Court has repeatedly stated that "federal habeas corpus relief

---

[5] Although the Kentucky Supreme Court's decision does not mention the *Lane* standard by name, it applied the substance of this standard in addressing Kesseh's misjoinder claims. *Kesseh v. Commonwealth*, No. 2021-SC-0032-MR, 2022 Ky. Unpub. LEXIS 25, at *8 (Ky. Apr. 28, 2022) ("In order to succeed on these challenges Kesseh must prove that combining these charges into one case *severely prejudiced* him and resulted in a fundamentally *unfair* sentence.") (emphasis added).

does not lie for errors of state law." *Estelle*, 502 U.S. at 67-68 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). It is not the province of a "federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 68. In conducting habeas review, the Court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). State court evidentiary rulings do not rise to the level of due process violations unless they offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

### 1. Ground 2: The Disc Presented to the Jury During Deliberation

Due to the extensive nature of the charges against Kesseh, the trial court ordered the prosecution to create a digital copy of the surveillance footage presented at trial for the jury to take into the deliberation room. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *18. The prosecution prepared a disc containing ten folders which corresponded to twenty-three charges and inside of which included a series of files containing the video clips. *Id.* Kesseh argued on direct appeal that the digital copies of the videos resulted in undue prejudice. *Id.* at *16. Specifically, he argued that the organization of the folders and the video clips' file names (e.g., "cT1108C 1st floor Hallway to 1108" and "CT 1108 E Suspect Walking towards East Exit 1st Floor") impermissibly lowered the prosecution's burden of proof. *Id.* at *18. Similarly, in his habeas petition, Kesseh claims that the trial court erred when it allowed the jury to take into deliberation the disc containing "a digital flowchart linking twenty-three video surveillance clips to specific jury instructions, clips not admitted into evidence, and the testimonial statements of an unknown declarant." (DN 1-1, at PageID # 15). The Kentucky Supreme Court held that Kesseh did not object to the file names when they were introduced at trial by the Commonwealth's witnesses or when they were presented to

the jury. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *17. Therefore, the court limited its review to whether the claimed error was palpable and led to manifest injustice. *Id.* at *18. The court then held that no manifest injustice occurred. *Id.* at *20.

In the Warden's response, she argues that Kesseh procedurally defaulted this claim by failing to preserve it at trial. (DN 15, at PageID # 60). The Warden is correct; Kesseh's failure to properly raise this "flow-chart" evidentiary issue before the trial court means that it has been procedurally defaulted. A habeas petitioner procedurally defaults a claim when: "(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim." *Smith v. Robey*, No. 23-5596, 2023 U.S. App. LEXIS 33197, at *4 (6th Cir. Dec. 14, 2023) (alterations in original) (quoting *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020)). Procedural default bars federal habeas review of the claim unless the petitioner "demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

In Kentucky, a defendant is required to object to preserve errors for appeal. *See* Ky. R. Crim. P. 9.22 (requiring a party to, "at the time the ruling or order of the court is made or sought, make[] known to the court the action which that party desires the court to take or any objection to the action of the court"). Kesseh's counsel did not object, and the state court enforced this rule when it reviewed the claim for palpable error. Kentucky's contemporaneous-objection rule is an adequate and independent state ground for denying review. Kesseh does not acknowledge his procedural default in his § 2254 petition, nor does he discuss "cause" or "prejudice" to excuse his default. Kesseh, accordingly, has not overcome the cause and prejudice hurdle for his procedural

default.

However, even on the merits of the claim, Kesseh is not entitled to relief. The Kentucky Supreme Court determined that the video clips were properly given to the jury under Kentucky Rule of Criminal Procedure 9.72.[6] *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *20. The court determined that the Commonwealth took sufficient care to introduce the video clips at trial. *Id.* at *19. Witnesses identified the hallways outside their apartments and their stolen property in the surveillance footage. *Id.* The court also noted that Heather Hadden ("Hadden"), assistant manager of the two apartment buildings, and Detective Brown both provided testimony as to how the video clips were gathered and labeled. *Id.* Although the court acknowledged that "titles could become testimonial in nature," it concluded that "the inclusion of the word 'suspect' in a label or identifying a hallway location does not meet that threshold." *Id.* Because "the video clips were admitted at trial and subject to cross-examination by the defense," the Kentucky Supreme Court ruled that no error occurred by including them in the jury deliberation room. *Id.* at *20.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Kesseh asserts that the trial court erred in admitting the disc under Kentucky Rule of Criminal Procedure 9.72 or any other provision of Kentucky law, he merely alleges a violation of state law which does not justify habeas relief. Second, with respect to federal law, Kesseh fails to establish a constitutional violation. By alleging that the video surveillance clips contained "testimonial statements of an unknown declarant[,]" (DN 1-1, at PageID # 15), Kesseh appears to argue that the file names in the disc violated his rights under the Sixth Amendment's Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004), the Supreme Court held that the Confrontation Clause

---

[6] Kentucky Rule of Criminal Procedure 9.72 allows jurors to "take all papers and other things received as evidence in the case."

bars the use of "testimonial" hearsay in criminal trials. But the titles of the file names do not constitute hearsay. The video clips were compiled by the apartments' managing company, and Hadden testified at trial as to how the footage was labeled. Defense counsel had the opportunity to cross-examine both Hadden and the witnesses who identified the hallways outside their apartments. Furthermore, as the Kentucky Supreme Court noted, the file names are not "testimonial" in nature. Kesseh has not pointed to, nor is this Court aware of, any case in which the Supreme Court found that a file name including "suspect" or a hallway identification to constitute a "testimonial" statement. Although the Kentucky Supreme Court did not cite to United States Supreme Court precedent, it did not unreasonably apply or reach a decision contrary to it in rejecting Kesseh's claim. Thus, relief on this ground is not recommended.

### 2. Ground 3: Video Clips Admitted into Evidence Without a Time Stamp

In his second evidentiary claim, Kesseh alleges that the trial court erred in admitting "video surveillance clips absent proof that the clips accurately depicted the time of an offense resulting in prejudice." (DN 1-1, at PageID # 15). The Warden argues that the Kentucky Supreme Court's holding that the video clips were properly authenticated was not contrary to, or an unreasonable application of, Supreme Court precedent and, because this issue is one of state law, Kesseh's claim is non-cognizable in a federal habeas court. (DN 15, at PageID # 63-64).

Kesseh raised this same claim on direct appeal, arguing that, "because several video clips were not accompanied by an 'on-screen' time stamp, those videos [were] inadmissible because they fail[ed] to show that he was present at the time of the burglaries." *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *20. The Kentucky Supreme Court determined that, under Kentucky Rules of Evidence, the video clips were properly authenticated. *Id.* at *20-22. The court explained that the burden for authentication is slight and requires only a prima facie showing of authenticity. *Id.* at *

21. Under Kentucky law, evidence may be properly authenticated by: "[t]estimony of a witness with knowledge[;]" "[d]istinctive characteristics and the like[;]" and "[e]vidence describing a process or system used to produce a result[,]" among other methods. KRE 901(b)(1), (b)(4), (b)(9). Although the Kentucky Supreme Court acknowledged that "no direct eyewitnesses authenticated the scenes depicted in the video clips," it concluded that "the Commonwealth presented sufficient testimony to properly contextualize and identify the surveillance footage in accordance with KRE 901." *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *22.

Because Kesseh alleges the trial court erred in applying a Kentucky evidentiary rule, Kesseh is only entitled to habeas relief if the error was so fundamentally unfair that it violated his due process rights. Kentucky Rule of Evidence 901 closely tracks Federal Rule of Evidence 901. Both allow the admission of evidence if it can be authenticated by witness testimony, unique characteristics, or evidence about a process or system. *Compare* KRE 901(b)(1), (b)(4), (b)(9), *with* Fed. R. Evid. 901(b)(1), (b)(4), (b)(9). As the Kentucky Supreme Court noted, the Commonwealth presented the jury with testimony from both Hadden and Detective Brown to authenticate the surveillance footage. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *21-22. Hadden testified that she and another employee compiled the video clips for Detective Brown and described how the surveillance footage was searchable by time and date. *Id.* at *21. Detective Brown testified that he relied on victim statements and the Computer-Aided Dispatch Report to set the parameters for the surveillance footage and he requested footage for thirty minutes before and after a crime was reported to have occurred. *Id.* at *21-22. He then testified that he reviewed the footage with the apartments' managing company before it prepared a disc containing the relevant footage. *Id.* at *22. Although not all the clips were identified by date and time, witnesses reviewed the footage at trial and identified the location in the films along with stolen items. *Id.*

Other than Kesseh's bare assertion that the introduction of these clips resulted in "prejudice," (DN 1-1, at PageID # 15), he fails to elaborate on what prejudice he suffered. Nor does he identify Supreme Court precedent which establishes that the admission of the video clips violated his right to due process. The Kentucky Supreme Court's holding was not contrary to or an unreasonable application of federal law. Therefore, the Court recommends relief be denied as to this claim.

### C. Ground 4: Alleged Prosecutorial Misconduct

In his fourth ground for habeas relief, Kesseh alleges three instances of prosecutorial misconduct. (DN 1-1, at PageID # 15). First, he argues that the trial court "failed to cure a misstatement of the law regarding the value of stolen property resulting in five felony-theft conviction [sic]." (*Id.*). Second, Kesseh asserts that the prosecutor "misled the jury to believe that twenty-plus eyewitnesses identified [him]." (*Id.*). Third, Kesseh alleges that "[t]he uncured testimony of the penalty phase witnesses misled the jury to believe that probation supervised [him] at the time of [sic] offense." (*Id.*).

Claims of prosecutorial misconduct are reviewed deferentially on habeas review. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To prove prosecutorial misconduct, a petitioner must demonstrate both that statements made by the prosecutor were improper and that those improper statements deprived the petitioner of a fair proceeding. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). For there to be a due process violation, the comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Habeas relief should be issued only when a state court's rejection of a prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562

U.S. 86, 103 (2011)). In this regard, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the misconduct tended to mislead the jury or prejudice the petitioner. *United States v. Young*, 470 U.S. 1, 11-12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 567 U.S. at 48 (internal citations omitted) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 655 (2004)).

In her response, the Warden relies on *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994), which outlined a four-factor test utilized by the Sixth Circuit in analyzing prosecutorial misconduct claims. (DN 15, at PageID # 69). However, the Warden's reliance on Sixth Circuit law is incorrect—a mistake previously made by several courts in this Circuit. When determining whether a petitioner is entitled to habeas relief, federal courts may only look to the specific holdings of the United States Supreme Court. *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). In a prosecutorial-misconduct case, the Supreme Court chastised the Sixth Circuit for applying its own interpretations of its cases to habeas petitions. *See Parker*, 567 U.S. at 48-49 ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here."). Nevertheless, the Court concludes that the Kentucky Supreme Court's holding on Kesseh's prosecutorial misconduct claims was not contrary to, or an unreasonable application of, Supreme Court precedent.

### 1. Ground 4(a): Assessing the Value of the Stolen Property

Five of the counts for which Kesseh was convicted involved theft by unlawful taking over

$500.00. *See* Ky. Rev. Stat. Ann. § 514.030 (LexisNexis 2024).[7] In *Tussey v. Commonwealth*, 589 S.W.2d 215, 215 (Ky. 1979), the Kentucky Supreme Court established that, under this statute, "the value of the stolen property on the date the offender receives it is proper for determining the severity of the violation." In addition, the court affirmed in *Commonwealth v. Reed*, 57 S.W.3d 269, 271 (Ky. 2001), that owners are competent to testify regarding the value of their property so long as they give "sufficient detail for the jury to make a value determination." In its closing statement, the Commonwealth stated:

> On theft by unlawful taking [defense counsel] said we didn't bring in receipts, we didn't show you specifically the value. The value is the cost. Ask anybody how they value the things they own and it's how much they spent to purchase it. Now most of these kids were students. Their computers, their laptops were relatively new. Their electronics were relatively new. It doesn't say anything in here about depreciated value.

(DN 15, at PageID # 66). Defense counsel objected: "I don't think it's limited to purchase price. She never asked what anybody purchased anything for. So, I'm thinking we're off the rails here, and I'd object." (*Id.* at PageID # 66-67). The trial court overruled the objection and stated, "It says value and [the jury is] to decide value based on the testimony they heard. I think it's a fair argument both ways." (*Id.* at PageID # 67). Kesseh asserts that the trial court erred by failing to cure the prosecutor's misstatement of the legal standard by which the jury was required to assess the value of the property. (DN 1-1, at PageID # 15).

On direct appeal, the Kentucky Supreme Court addressed Kesseh's claim and acknowledged that the prosecutor's statement was a misrepresentation of the law. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *25. However, the court explained that the standard for reviewing prosecutorial misconduct claims was whether, "despite the misstatement, the Commonwealth

---

[7] Ky. Rev. Stat. Ann. § 514.030 (LexisNexis 2024) was amended in June 2021 to establish the felony threshold at $1,000.00. At the time of Kesseh's offenses and trial, the threshold was $500.00.

provided overwhelming evidence of Kesseh's guilt." *Id.* In concluding there was overwhelming evidence, the court relied on the fact that the five victims each testified that their stolen property was worth more than $500.00. *Id.* at *25-26.

While the prosecutor's statement was improper, Kesseh has not demonstrated that it "so infected the trial with unfairness" that he was denied due process. The facts relied on by the Kentucky Supreme Court support this Court's determination as well. Kirk testified that the value of her laptop, at the time it was stolen, was $1,200.00, and Washington testified that the total value of her PlayStation 4, Nintendo Switch, and speaker was roughly $780.00. *Id.* at *26. Rose testified that his laptop was worth roughly $1,000.00. *Id.* McFarland testified that her laptop was worth $800.00, and Schreiber testified that his laptop, X-box 360, and camera were worth approximately $2,000.00.[8] *Id.* Despite having the opportunity, defense counsel did not cross-examine the victims (aside from Schreiber) about the value of their property at the time it was stolen. (DN 15-2, at PageID # 234-35). Moreover, the defense did not present any proof to contradict the victims' valuations. (DN 15, at PageID # 70). It was the jury's responsibility to decide the value of the property based on the evidence, and they determined that the victims' stolen goods were worth more than $500.00. Given the victims' testimony, the Court cannot find that Kesseh was prejudiced by the prosecutor's improper statement or that the statement deprived Kesseh of a fair trial. Accordingly, the Court recommends relief be denied as to this claim.

### 2. Ground 4(b): The Statement Regarding Eyewitnesses

The Commonwealth also stated the following in its closing argument:

> We're not asking you to just accept one witness I.D. We're not asking you accept even the twenty plus eyewitness I.D.'s. We're asking you to weigh it with the video,

---

[8] Schreiber valued his Xbox, with depreciation, between $300.00 and $400.00 and his camera at $500.00. (DN 15-2, at PageID # 234) (citing VR: 9/11/20, 10:14:05). He valued his laptop, at the time of purchase, between $1000.00 and $1,200.00. (DN 15-2, at PageID # 234 (citing VR: 9/11/20, 10:14:05). During cross-examination, Schreiber stated that he had purchased his laptop the year prior. (DN 15-2, at PageID # 234) (citing VR: 9/11/20, 10:14:55).

> with the evidence that he had in his possession at the time, with the DNA. We're asking you to rely on all of the evidence. The piles of evidence that link him to every single one of these offenses. That link him to every single violation, every one of those students at UofL. We're asking you to find him guilty of each and every one of these offenses that he committed.

*Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *26. Kesseh argues that he is entitled to habeas relief because the prosecution incorrectly claimed that he was identified by twenty witnesses. (DN 1-1, at PageID # 15).

The Warden first asserts that this prosecutorial misconduct claim is procedurally defaulted. She is correct. As the Supreme Court of Kentucky acknowledged, Kesseh conceded that this alleged error was unpreserved and only reviewable for palpable error. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *23. Kesseh's failure to preserve this issue at trial results in his procedural default. As previously discussed, procedural default bars habeas review of the claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom. *See Williams*, 460 F.3d at 806. Kesseh has not undertaken a cause and prejudice analysis in his petition. Thus, this claim is procedurally defaulted.

But even if Kesseh's claim was not procedurally defaulted, it would not constitute grounds for habeas relief. The Kentucky Supreme Court explained that, under palpable error review, it would not reverse unless "the alleged conduct was flagrant[;]" in other words, the conduct "render[ed] the trial fundamentally unfair." *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *23-34 (alterations in original) (quoting *Brafman v. Commonwealth*, 612 S.W.3d 850, 861 (Ky. 2020)). Applying several factors to analyze the prosecutor's statement,[9] the court concluded that it was not

---

[9] The Kentucky Supreme Court applied the following factors to determine whether the prosecutor's improper statement was sufficiently flagrant to require reversal: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *Kesseh v. Commonwealth*, No. 2021-SC-0032-MR, 2022 Ky. Unpub. LEXIS 25, at *24 (Ky. Apr. 28, 2022).

flagrant. *Id.* at *28. Specifically, it emphasized that the prosecution presented more than a dozen surveillance video clips and seven eyewitnesses who identified Kesseh at trial as well as evidence that Kesseh had several stolen items in his possession when he was arrested. *Id.* The court noted that the prosecutor's statement was isolated, "coming in the final minutes of an extensive closing argument in which the Commonwealth had otherwise systematically addressed the elements of each charge against Kesseh." *Id.* Finally, the court determined that the prosecutor's statement had not materially misled the jury because it appeared to have been accidental and the number of eyewitnesses was "not integral to the underlying theory and proof of guilt." *Id.*

The prosecutor did misrepresent the evidence by claiming that over twenty eyewitnesses identified Kesseh. However, Kesseh has not shown that this statement deprived him of a fair trial. *See Meridy v. Ludwick*, No. 2:08-CV-15249, 2017 U.S. Dist. LEXIS 120219, at *18 (E.D. Mich. July 31, 2017) (denying habeas relief where prosecutor improperly argued that no witnesses could corroborate petitioner's story when, in fact, two witnesses had done so). In finding that the prosecutor's conduct did not render the trial fundamentally unfair, the Kentucky Supreme Court's analysis closely tracked federal law. Including the seven eyewitnesses, the Commonwealth presented over thirty witnesses throughout the trial. (DN 15, at PageID # 72). The defense had the opportunity to cross-examine the seven eyewitnesses who identified Kesseh and point out other weaknesses with the prosecution's case. Defense counsel had the opportunity to mention in its closing argument that only seven eyewitnesses identified Kesseh. The overwhelming evidence against Kesseh makes it dubious that this singular statement misled the jury or prejudiced Kesseh to any significant degree. As such, the Court recommends that relief be denied as to this prosecutorial misconduct claim.

### 3. Ground 4(c): The Penalty Phase Testimony

Kesseh's final prosecutorial misconduct claim challenges the testimony of two Commonwealth witnesses during the penalty phase of his trial. (DN 1-1, at PageID # 15). Sarah Butler ("Butler"), a paralegal in the Commonwealth Attorney's Special Victims Unit, testified regarding Kesseh's prior convictions. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *28. Butler testified that Kesseh had been convicted of fourth-degree assault and harassment for which he received a conditionally discharged sentence. *Id.* at *29. The prosecutor asked Butler, "Okay, so when a sentence is conditionally discharged does that mean that he, does he serve a sentence in jail or is that essentially a community supervision type of sentence?" *Id.* Butler replied, "Yes, it's community supervision." *Id.*

Later, the prosecution called Tara Vincent ("Vincent"), a supervisor with the Division of Probation and Parole within the Kentucky Department of Corrections, to testify about the implications of Kesseh's potential penalties. *Id.* at *29-30. Vincent testified that, during probation, an individual is "allowed to remain in the community instead of going to prison" and that the conditions of "community supervision" are based on a needs assessment completed by the Department. *Id.* at *30. Kesseh alleges that Butler and Vincent's testimony erroneously led the jury to believe that probation was supervising Kesseh at the time he committed his crime spree. (DN 1-1, at PageID # 15).

As with Kesseh's second claim of prosecutorial misconduct, this claim is also unpreserved. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *23. Again, Kesseh fails to discuss cause for his procedural default or any resulting prejudice in his petition for relief. As such, this issue is procedurally defaulted.

Nevertheless, this ground for relief fails even if it had not been procedurally defaulted. The Kentucky Supreme Court, reviewing Kesseh's claim for palpable error, found Kesseh's final

prosecutorial misconduct claim to be without merit. *Id.* at *30. Noting that "Butler's and Vincent's description of 'conditional discharge' and 'community supervision' accurately reflected KRS 533.020[,]" the court found no error. *Id.* at *31. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Acknowledging the deference this Court owes to the Kentucky Supreme Court, its determination that the witnesses' testimony constituted accurate statements of Kentucky law forecloses Kesseh's misconduct claim. Thus, relief on this ground is not recommended.

### D. Ground 5: Cumulative Error[10]

Kesseh also argued on direct appeal that his convictions should be reversed based on cumulative error. *Kesseh*, 2022 Ky. Unpub. LEXIS 25, at *31. The Kentucky Supreme Court held that, because none of the alleged errors were found to be "individually substantial or prejudicial," no cumulative error occurred. *Id.* at *32. As the Warden correctly notes, it is well-established within the Sixth Circuit that a habeas petitioner cannot premise relief on a claim of cumulative trial error. *See, e.g.*, *Williams*, 460 F.3d at 816 ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.").

Moreover, Kesseh's claims of error by the trial court are without merit. Thus, "[a]ssuming without deciding that cumulative error can form the basis for § 2254 habeas relief," Kesseh is

---

[10] Kesseh, under "Ground One" of his petition, lists "Cumulative Error" as a ground for relief. (DN 1-1, at PageID # 15). Confusingly, however, in his "Supporting Facts" section, Ground 5 is a duplicate of Ground 4(c)—his penalty phase prosecutorial misconduct claim. (*Id.*). The Court assumes that this is a clerical error and that Kesseh intended to raise the same cumulative error claim he raised in state court.

nonetheless not entitled to relief because "there are simply no errors to cumulate." *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (quoting *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004) ("Because [petitioner] cannot establish any errors to cumulate and because his theory that errors can be considered in the aggregate depends on non-Supreme Court precedent, this claim is also without merit.")). Accordingly, the Court rejects habeas relief for this claim.

### E. Certificate of Appealability

The final question is whether Kesseh is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the five grounds raised in his habeas petition. When the court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong for this Court to issue a COA. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

Here, none of the grounds raised by Kesseh could be debated by reasonable jurists. Reasonable jurists would not debate that, as to his misjoinder claim (Ground 1), Kesseh failed to advance any substantive argument that the trial court's failure to sever his charges violated his right to a fair trial. Reasonable jurists would agree that, at minimum, a petitioner must carry his burden to demonstrate that he suffered actual prejudice due to the trial court's denial of his severance motion. The Court, therefore, does not recommend a COA issue as to Ground 1 of his petition.

Kesseh's evidentiary claims are also not likely to be found debatable or wrong by reasonable jurists. Kesseh has not made a substantial showing of any denial of his due process rights in these claims, and the Court does not recommend a COA issue as to Grounds 2 and 3.

The Court finds its assessment of Kesseh's prosecutorial misconduct claims under *Darden* would not be challenged by reasonable jurists because he cannot establish that the alleged

misconduct caused his trial to be so unfair as to constitute a due process violation. As such, the Court does not recommend a COA issue as to Ground 4.

Likewise, reasonable jurists would not debate that, because Kesseh fails to demonstrate individual constitutional errors, he is not entitled to relief under § 2254 for purported cumulative error (Ground 5).

As to Grounds 2, 4(b), and 4(c), which the Court also denies on procedural grounds, the petitioner must satisfy a two-pronged test for a COA to issue: (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484. Because he failed to preserve these issues at the trial court level, a plain procedural bar is present to Kesseh's following claims: (1) his "flow-chart" evidentiary claim (Ground 2); (2) his prosecutorial misconduct claim relating to the prosecutor's statement about twenty eyewitnesses (Ground 4(b)); and (3) his prosecutorial misconduct claim relating to the penalty-phase witnesses' testimony (Ground 4(c)). Because Kesseh does not acknowledge his defaults or attempt to establish cause and prejudice to cure such defaults, the Court recommends a COA be denied as to Grounds 2, 4(b), and 4(c).

## IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** Kesseh's Petition for Writ of Habeas Corpus (DN 1-1) be **DENIED.** The Court further recommends that a Certificate of Appealability be **DENIED** as to each of Kesseh's claims.

NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, U.S. 140 (1984).


Copies:     Alfred Kesseh, *pro se*
            Counsel of Record